My name is Stephen Babcock. I'm an assistant federal defender for the District of Montana. I represent the appellant in this matter, Geofredo Littlebird. I would ask that I have two minutes for rebuttal. Okay. You've got it there, but I want to try to help you watch that as well. Thank you very much. The sole issue that remains on this case is whether or not the illegal stop that was conducted by Sheriff's Deputy Harold Brin on May 3rd of 2009 was effectively attenuated from the confession that Littlebird gave on May 5th of 2009. The district court held that it was. There are three factors that the Supreme Court has told us that we're supposed to take a look at in determining whether or not effectual attenuation has occurred. It all stems from Long Son and the application of the exclusionary rule. In Brown v. Illinois, the Supreme Court said, first of all, you take a look at temporal proximity, in other words, when the illegality happened on this case. There was an illegal stop on this case. The government conceded that from the commencement, from the briefing on this case at the district court level. The question is whether or not how much time that came into play, which was about two days, effectually, afterwards. That is undisputed. That happened on May 5th of 2009. And the Supreme Court in Brown, in all the progeny of cases thereafter, more or less says there is no bright-line rule on what is the timeline, so the time must be considered with the rest of the circumstances. The intervening circumstances is certainly up for hot debate. The intervening circumstances on this particular case, the district court held that Mr. Little Bird himself instigated the interview. We believe that the records do not support such a finding in this particular case. What's the standard, our standard, of reviewing that finding? It's a very interesting question. It could be clear air, in other words, if it was just an issue of fact. I do believe, as the government has pointed out actually in their reply brief, that this is fact along with law. So I would ask the court. You instigated the interview as a question of law? It could be when applied to Brown versus Illinois. Otherwise, if you take a look at whether or not it's mixed law and fact, I would argue that it would be de novo. If it's just an issue of fact, of course, then the issue is clear. But it's a question of who set up the meeting. If that's a matter of law, I need to go back to law school. I guess when you take a look at whether or not it goes into the intervening circumstance as stated in Brown versus Illinois, if you apply it to that law. Okay, so let me make sure I understand what you just said. You agree that the factual determination, who requested the interview, is a pure question of fact. Correct. But then the question becomes how the district court applied that fact, assuming we find it not clearly erroneous, to the legal factor of whether that's an intervening circumstance. That's exactly what I believe, yes. We look at under the totality of circumstances, correct, under the Wellins case. Yes, exactly. Okay, but isn't there more to intervening circumstances, the legal question than simply who set up the interview? Don't we also have to look at whether or not the defendant had an opportunity to confer with, in this case, a tribal lawyer, and to have that tribal lawyer present with him while the interview was conducted? Doesn't that all go to the intervening circumstances? I believe that it does. In this case, though, the holding by the district court that the finding that Mr. Littlebird instigated the interview himself was held to be enough to attenuate the illegality of the previous stop. So, yes, I would agree that this court should take a look at a whole. And I think the record is completely murky. So you don't think the district court did that? I may have missed that when I read Judge Siebel's findings, but I thought he cited access to counsel as one of the factors that he considered. He certainly did. But he also stated in there specifically the fact that the court finds that Mr. Littlebird instigated the interview himself is enough in and of itself for attenuation to have occurred. Then the court goes on, the district court, and lists the other factors that Judge has talked about. But even if we were to assume that the actual findings were incorrect, you still have to meet the totality of circumstances given the tribal advocate and the timing and the other circumstances, correct? Correct. So the fact that even if we accept your argument on the finding, it doesn't get you to the end of the game. Well, I think it could if you take a look at the third factor in this case. And the third factor in this case is the purpose and flagrancy of the official misconduct. As the record supports, very interesting that Officer Brynn testified that he had actually no training at all when he was supposed to stop a vehicle. I think as if you take a look at the cases and distinguish that from United States v. Herring, that an officer who admitted on the stand that he has received no training of when he has particularized suspicion to conduct an investigatory stop, I think that could be deemed flagrant. And then you take a look at the reason, at the purpose for the stop. The purpose of the stop simply was because Mr. Littleburn was in a high-crime area where people were known to deal dope and to smoke dope. This is certainly, and it stemmed in to an investigation for methamphetamine. If you take a look also. Who conducted the drug investigation in this case? It wasn't the Sheriff's Department, was it? The Sheriff's Department was the Officer Brynn actually conducted the investigative stop. No, no, I understand the initial stop. Your client stands convicted of federal drug trafficking charges. Correct. BIA officer was on the scene after the stop. Right, but BIA officer didn't have anything to do with the initial stop. He rolled as backup. That's correct. Okay, so I guess I think the answer to my question is the Bighorn County Sheriff's Office had absolutely nothing to do with the federal criminal prosecution, which, as I understand it, arose out of the admissions that your client made to the BIA investigator two days later. Well, I think that it certainly could have arose also after the stop and the search by Officer Brynn in which there was over five grams of actual methamphetamine seized at that particular time. But that evidence was suppressed, wasn't it? That evidence was conceded, but that was, of course, well thereafter. BIA officer showed up and actually seized the methamphetamine himself, Officer Herrera. And then, of course, he was the individual that was certainly involved. Let me ask the question more directly. Does the law make a distinction for purposes of determining the connection here as to whether the initial activity of the deputy sheriff can somehow taint a completely different investigation conducted by a different agency two days later? I would argue not, because if you take a look at Brown and the other cases about it, there's multiple law enforcement officers that are involved in those particular cases. And if you take a look in this case, not only was Officer Herrera involved in the interview, he seized the methamphetamine himself and arrested Littleburg. So I think if you take a look at the fragrancy and also the purpose of this stop, I think that comes into play. And to go back to the point, and the district court relied heavily upon this, is about the tribal advocate that Mr. Littleburg talked to. Obviously, the tribal advocate has not gone to one day of law school. I'm not here to bash him, but he certainly is not licensed in any bar or anything like that. And he testified to that point. And I think when you take a look at the record and the testimony in cross-reference with everyone that Mr. Upuntich, who had represented Mr. Littleburg in the past, had no idea about this until he was contacted by jail personnel. And jail personnel told him that the feds were there and GEOFED wanted him to be there. Do you want to reserve your remaining time? I would. Thank you very much, Your Honor. Good morning. May it please the court. Bishop Grewell on behalf of the United States. I want to deal with three of the factors that should lead this court to finding attenuation occurred here. First of all, the fact that Mr. Littleburg initiated the interview. Second, the fact that he had counsel present. And third, the fact that while the violation here, the stop, was a flagrant one, the interviewing officers of the federal government didn't exploit that particular illegality. To the first point, the fact that Mr. Littleburg, first of all the standard of review about whether he initiated it is clear. That's a factual question and it's only when you're determining whether that particular fact led to attenuation applying the law to that fact that we have a de novo review. The fact that Mr. Littleburg engaged in an affirmative act by initiating the interview as opposed to reacting to some inquiry from law enforcement suggests that this was in fact a voluntary act of free will, which is what the question is here. Was it sufficiently free will that he initiated this interview? In all of the cases that are cited in the briefs with the exception of Pedroza, the fruit is attained in reaction to something that law enforcement has done. Either they've requested an interview, they've asked for a consent to search, with the exception of the Pedroza case from the Seventh Circuit, where the defendant actually voluntarily said, you know, go ahead and search my house if you'd like to. The Seventh Circuit found that that was a sufficient intervening circumstance on its own because he had taken that affirmative act as opposed to reacting to find an attenuation. As far as Mr. Littleburg's counsel, this was counsel that he had chosen. He'd initially been assigned a different tribal advocate. He had had Mr. Yupunzich once before, apparently was satisfied with the results there, and therefore he had chosen to have Mr. Yupunzich represent him again. When we consider that the question we're asking is, was this an act of free will on his part, the competence of the counsel here is really not that relevant of a question, but even if his court were concerned with that, Mr. Yupunzich had four years as a tribal advocate, so he was regularly dealing with these sorts of stops and seizures that occur on the reservation. And while he wasn't state bar certified, he was bar certified by the Crow Tribal Court. And the Crow Tribal Constitution incorporates the Fourth Amendment in Article 11, Section 4B of its Constitution. So advocates who study for the Crow Bar and pass the Crow Bar do in fact have to be familiar with Fourth Amendment law and do have to study for that. That, combined with his experience, suggested that he was competent to handle the issue here. The final factor that I think is particularly important here is that the officers didn't exploit the illegality. As Judge Tolman pointed out, it was different officers who ended up doing the interview here. This wasn't a situation as in Washington or Davis or other cases where they're basically saying, well, you know, we found this on you, come clean or let us have a search. I think if this court compares its Wellens decision with the Ronald Washington decision from 2004, those cases are essentially the same. But in Wellens, this court found that there was attenuation because the person had had counsel and because basically the officers hadn't really exploited the illegality. Whereas in Washington, they had unconstitutionally capitalized on the primary legality to attain the fruit. And the Washington court also noted that he had counsel. The circumstances are pretty similar in the way the court in Washington phrases it. It's basically they're on a fishing expedition in the hopes that something will show up or turn up. That's basically this case, right? Well, with the initial stop, but not with the way the fruit is attained. There was no fishing expedition because the officers didn't set up the interview. And so where they said there was a fishing expedition So basically if you use a cut out, then you'd be okay. That you're saying also in that regard that the flagrancy just dissipates. Right. If the officers here had said after the stop, you know, you better talk to us. We found these drugs on you. Let's have an interview. We've got you. They'd be using the illegal stop, exploiting that to get the fruit here, which is the interview. And that, I think, would be a problem. But that didn't occur here. So I think those three factors argue in favor of a finding of attenuation. Unless the court has any other questions, I'm happy to cede the remainder of my time. Thank you. Thank you. Thank you. I think it's important that it's very clear through Brown and through all the rest of the cases that the burden completely relies on the government if there is an illegality. I think when taking a look at the record in this case, that the burden was not carried in and of itself. That little burden, in fact, instigated the interview. In taking a look at the interviews of Herrera and with Larvie and with Agent Wyan that testified afterwards, and also with Tribal Lay Advocate Stevie Puntich, I don't think you can come to the conclusion, as the district court did, that, yes, in fact, Mr. Little Bird instigated the interview. What's the standard of proof? The standard of reproof on that, I guess, we would go right back to the clear air standard if it was in dealing with whether or not it was an issue of fact. No, maybe I didn't articulate the question correctly. Isn't the standard or the sufficiency of the proof by preponderance of the evidence? Yes. Okay. Yes, and I think when you take a look at that, you cannot come to that conclusion. When keeping in mind, of course, it's the government's burden. Taking a look at the flagrancy and the purposelessness of the stop, I don't think that it is. Let me stop you again. The preponderance is a pretty low burden, more likely than not, and your argument is there's absolutely no evidence from which the court could find by preponderance of the evidence that your client initiated the interview on this record? No, there isn't. I would say if you take a look at the testimony of Herrera and from Larvie and from Upendich, not one time in the record is it said that Mr. Littlebird is the individual that set this up. But you've got the testimony by the agent. I didn't set it up. You've got the testimony by the tribal advocate that I got a call from the jail saying, my client wanted me to be there, and there's no testimony from anybody else that they set up the interview. So why isn't it logical for the district court to conclude by preponderance that your client was the one who requested the interview? Well, if you take a look at Officer Herrera's testimony, and it was specifically asked to him on direct examination, did Mr. Littlebird contact you through jail personnel? His exact answer was, I don't know. I don't know. I can't recall. But he did affirmatively testify that he didn't set up the interview, correct? Yes, yes, he did affirmatively testify to that. So why is that answer relevant to answering the question of whether there is sufficient evidence from which the district court could conclude by preponderance that it was your client who requested the meet? If you take a look at that in conjunction with Steve Upendich's testimony, Steve Upendich was apparently contacted by jail personnel. He showed up. The officers were already there. And if you take a look at Herrera's, the rest of his testimony, that he testified affirmatively twice on direct, also on cross, that he was supposed to contact Upendich. Well, he never called Upendich. Upendich had no idea this was going on, and he showed up. Both the officers were already there. I know that preponderance is a very low standard, but I think when you take a look at this, you can even get to preponderance on whether or not the interview is set up by Mr. Littlebird. Thank you. Thank you. Thanks, both counsel, for your arguments this morning. United States v. Littlebird is submitted.
judges: Guy, McKeown, Tallman